## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

SIERRA CLUB,

      Plaintiff,

      vs.                                 No. 10-cv-00332 JB/JHR

SAN JUAN COAL COMPANY,
BHP BILLITON, LTD.,
PUBLIC SERVICE COMPANY
OF NEW MEXICO,
AND PNM RESOURCES, INC.,

      Defendants.

### DEFENDANT SAN JUAN COAL COMPANY'S RESPONSE
### TO MOTION TO AMEND CONSENT DECREE

Defendant San Juan Coal Company ("SJCC"), through its undersigned counsel, respectfully submits the following response to Plaintiff Sierra Club and Defendant Public Service Company of New Mexico ("PNM")'s Motion to Amend Consent Decree. (Doc. 46)

As set forth in the motion, PNM and Sierra Club have apparently reached agreement concerning additional tasks to be completed in connection with environmental remediation at the San Juan Generating Station and San Juan mine. Accordingly, Sierra Club and PNM wish to modify the Consent Decree to accomplish those tasks. SJCC has no objection to those parties amending or extending the Consent Decree between themselves if they wish to do so. But Sierra Club and PNM have not established any need or justification for maintaining SJCC as a party to the Consent Decree as part of the proposed modification and extension. In particular, Sierra Club and PNM have not shown changed circumstances sufficient to warrant the modification they seek as to SJCC. Nor have Sierra Club and PNM shown that the modifications they seek are

suitably tailored to any changed circumstances such that SJCC should be subject to any modification or extension of the consent decree.

## I.      Factual Procedural Background

This case arises from claims asserted by Sierra Club against PNM and SJCC under the Surface Mining Control and Reclamation Act, 30 U.S.C. §§ 1201-1328 ("SMCRA") and the Resource Conservation Recovery Act, 42 U.S.C. § 6901-6992k ("RCRA") relating to the operation of the San Juan Generating Station and the nearby San Juan Mine. On April 12, 2012, the Hon. M. Christina Armijo entered a Consent Decree that reflected an agreement between Sierra Club, PNM, and SJCC concerning certain remedial actions that would be taken to address Sierra Club's claims. (Doc. 37) By its terms, that Consent Decree was to terminate upon the conditions for removal of the "Recovery System" from service, or 10 years from the date of entry of the Consent Decree, whichever occurs later. *See* Doc. 37 at 52. By agreement of the parties, on or about April 26, 2022, the Consent Decree was extended until August 31, 2022. (Doc. 45)

## II.      Argument

"Since consent decrees and orders have many of the attributes of ordinary contracts, they should be construed basically as contracts . . . ." *McClendon v. E.M.*, No. CIV 95-0024 JB/KBM, 2022 U.S. Dist. LEXIS 161097, at *86 (D.N.M. Sep. 6, 2022) (quoting *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 236 (1975)). The Supreme Court has further explained that

> [b]ecause the defendant has, by the decree, waived his right to litigate the issues raised…the conditions upon which he has given that waiver must be respected, and the instrument must be construed as it is written, and not as it might have been written had the plaintiff established his factual claims and legal theories in litigation.

*United States v. Armour*, 402 U.S. 673, 682 (1971).

A court has authority under both Federal Rule of Civil Procedure 60 and its equitable powers to modify a consent decree, including by extending the termination date. *McClendon*, 2022 U.S. Dist. LEXIS 161097 at *87; *see David C. v. Leavitt*, 242 F.3d 1206, 1210 (10th Cir. 2001). When a party seeks modification of a consent decree, however, that party "bears the burden of showing that 'a significant change either in factual conditions or in law' warrants revision of the decree. *Jackson v. Los Lunas Cmty. Program*, 880 F.3d 1176, 1194 (10th Cir. 2018) (quoting *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992)).[1] Changed circumstances sufficient to modify a consent decree are present "(a) when changed factual conditions make compliance with the decree substantially more onerous; (b) when a decree proves to be unworkable because of unforeseen obstacles; or (c) when enforcement of the decree without modification would be detrimental to the public interest." *Cronin v. Browner*, 90 F. Supp. 2d 364, 369 (S.D.N.Y. 2000) "If the moving party meets this standard, the court should consider whether the proposed modification is suitably tailored to the changed circumstance." *Rufo*, 502 U.S. at 383.

A.    *The Moving Parties Have Not Shown Changed Circumstances Sufficient to Support the Requested Modification.*

Here, Sierra Club and PNM seek both substantive modifications to the Consent Decree as well as an extension of that Consent Decree for an additional period of five years beyond August 31, 2022. *See* Mot. Ex. A at 3. But the motion contains no explanation of how circumstances have changed such that the requested modifications and/or extension are merited.

---

[1]    Although *Rufo* spoke to the standards applicable to a consent decree entered in institutional reform litigation, other courts have found the standard set forth therein applicable to a broader range of litigation resulting in the entry of consent decrees. *See, e.g., Cronin*, 90 F. Supp. 2d at 370 (collecting cases and noting that "there is significant authority to support the application of *Rufo* in non-institutional reform cases, even in actions brought against non-governmental entities.").

As to the requested amendment to Exhibit 5 which addresses environmental restoration projects, the motion states that "[t]he supplemental environmental projects contained in the current Exhibit 5 are largely obsolete." Mot. at ¶ 6. Without any further explanation or any supporting evidence concerning the nature of this obsolescence or what caused it, this simple assertion is insufficient to establish changed circumstances that justify the requested modification, at least as to SJCC. Instead, the moving parties should be required to present evidence establishing the changed circumstances on which they rely. *See In re Consol. 'Non-Filing Insurance' Fee Litig*, 431 F. App'x 835, 841 (11th Cir. 2011) ("More importantly, there is simply no factual evidence that the circumstances have changed from the time Security Finance entered into the consent decree to when it sought to modify the decree."); *ACLU of Tenn., Inc. v. City of Memphis*, No. 2:17-cv-02120-JPM-jay, 2019 U.S. Dist. LEXIS 242227, at *76 (W.D. Tenn. Nov. 13, 2019) ("Any modification would need to be carefully crafted after a thorough review of evidence and a finding of sufficiently changed circumstances to compel a modification.").

The same holds true for the requested five-year extension of the Consent Decree. In seeking this extension, the motion rests exclusively on the premise that the requested extension would "provide sufficient time to complete the remaining tasks under the Consent Decree." *Id.* But the motion contains no explanation of how this proposed five year term was reached or how it is justified in relation to the scope of the proposed modification. This statement also does not explain specifically why such an extension is necessary as to SJCC.

Nor does the motion provide any explanation of why SJCC must remain bound by the Consent Decree through the proposed modification or extension. Notably, neither Sierra Club or PNM have alleged that SJCC has been in any way derelict or deficient with respect to

discharging its obligations under the Consent Decree. Had that been the case, the Court may have expected Sierra Club to bring that fact to the Court's attention well in advance of the expiration of the Consent Decree.

The motion also does not explain what continuing role, if any, SJCC will have with respect to the Consent Decree moving forward. The motion indicates that "Sierra Club and PNM have reached agreement as set forth in the Second Amendment and Amended Exhibit 5 on the resolution of and timeframe for the remaining tasks to be completed under the Consent Decree." Mot. at 3. This statement offers no indication that SJCC has any further involvement in these tasks. To the contrary, the proposed modification indicates that the environmental restoration projects contemplated by the proposed amendment will undertaken exclusively by PNM. *See id.* at Ex. A at 3 ("within one hundred twenty (120) days of the Court's Approval of the Second Amendment to the Consent Decree, PNM shall commence the Primary Environmental Restoration Projects as identified in Amended Exhibit 5 attached hereto.").

The same holds true with respect to the proposed modifications to Paragraphs 43-45 of the Consent Decree. Those paragraphs relate to the Site Characterization report and the evaluation of alternative remedial measures that would allow for removal of the Recovery System. SJCC's participation in this process is practically unnecessary. Paragraph 43 of the proposed modification contemplates that the "Parties" would confer concerning "an approach to be used in evaluating alternative remedial measures." *See id.* at Ex. A at 2. Paragraphs 44 and 45 provide that Sierra Club and the "Companies" shall evaluate the alternative remedial measures to determine whether the Recovery System may be removed. *Id.* at 2-3. Paragraph 45 concludes by explaining that "[i]f the Parties agree upon an Alternative Remedial Measure or set of Alternative Remedial Measures that, if implemented, would allow PNM to remove the Recovery

System from service, PNM shall be entitled to remove the Recovery System from service.…" *Id.* at 3.

As a practical matter, SJCC plays no meaningful role in evaluating the effectiveness of alternative remedial measures or determining whether or when the Recovery System can be removed. Indeed, the cost of operating and maintaining the Recovery Systems falls entirely on PNM. *See* Doc, 37 at ¶ 28 (describing conditions on PNM's funding of the Recovery System). And it is exclusively PNM that would benefit financially from receiving agreement from Sierra Club to remove the recovery system. Indeed, the ultimate goal of evaluating alternative remedial measures is to allow PNM to be relieved of the continuing obligation to operate the Recovery System.

> B.    *Sierra Club and PNM Have Not Shown that the Proposed Modification Is*
>        *Suitably Tailored to Any Changed Circumstances.*

As noted above, *Rufo* requires a court to determine whether the requested modification is "suitably tailored" to the changed circumstances. *Rufo*, 502 U.S. at 383. Here, the motion fails to show why the proposed modification and extension requires that SJCC be maintained as party to the Consent Decree. In particular, Sierra Club and PNM's motion contains no indication that SJCC has failed to discharge any of its obligations under the Consent Decree or that the remaining tasks identified in the motion involve any responsibility on the part of SJCC. Extending the Consent Decree as to SJCC would not represent suitable tailoring to address any changed circumstances.

> C.    *SJCC Is Entitled to Full Due Process Protections Before the Consent Decree May*
>        *Be Modified or Extended.*

Even if the twin requirements of *Rufo* have been satisfied, this Court must still consider the due process implications of any modification or extension of the Consent Decree. As the Supreme Court noted in *Armour*, the foundation of a consent decree is a party's willingness to

waive its due process rights and agree to what is in effect a negotiated settlement. *See Armour*, 402 U.S. at 682.

Here, SJCC waived its rights to litigate Sierra Club's claims and agreed to a consent decree that would have a term of no more than 10 years. Now, however, Sierra Club and PNM seek to extend that Consent Decree for another five years over SJCC's objection. Amending and extending the Consent Decree in this manner has substantial implications for SJCC's due process rights, as such a modification would impose additional burdens upon SJCC to which it did not agree and which it was never afforded the opportunity to litigate. As the Supreme Court of Maine has explained:

> Although modification of a consent decree is an available remedy, in the absence of a new agreement of the parties, it is not a remedy to be casually undertaken. A party who originally waived his right to litigate a request for an injunction is entitled to no less due process on a motion to modify the agreed upon injunction than a party who litigated the original request. A court may not make a modification without an adjudication or admission either that the defendant violated the existing consent decree or that other circumstances have arisen since the entry of the decree warranting a modification of the injunctive relief.

*State v. Shattuck*, 2000 747 A.2d 174, 180 (Me. 2000); *see also Chance v. Bd. of Exam'rs*, 79 F.R.D. 122, 126 (S.D.N.Y. 1978) ("Traditional notions of due process require caution in modifying a decree to afford additional relief when, as in this suit, the decree was entered on consent, without a plenary trial or final determination of liability.").

## CONCLUSION

For the foregoing reasons, Defendant San Juan Coal Company respectfully requests that the Court deny the Motion to Amend Consent Decree, or alternatively grant the motion only to the extent it seeks to amend the Consent Decree with respect to Sierra Club and PNM, such that the Consent Decree shall be deemed terminated with respect to SJCC.

DATED: September 19, 2022

Respectfully submitted,

**HOLLAND & HART LLP**

By: *_/s/  John C. Anderson_*
    John C. Anderson
110 North Guadalupe, Suite 1
Santa Fe, New Mexico 87501
Tel:  505.988.4421
JCAnderson@hollandhart.com

**ATTORNEYS FOR DEFENDANT
SAN JUAN COAL COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2022, I caused a true and correct copy of the foregoing to be filed and served electronically via the CM/ECF system, which caused all parties and counsel listed on the Court's Case Service Contacts to be served by electronic means.

*_/s/   John C. Anderson_*
John C. Anderson

19790152_v1